[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANT, RENA PINDER'S, REQUEST FOR ANORDER OF ALIMONY AFTER REMAND FROM THE APPELLATE COURT
Background From the File and the Stipulation of Facts
The marriage of the Plaintiff and the Defendant was dissolved on January 11, 1990 in the Superior Court at Norwich by the Court, Koletsky, J.
At the time of dissolution the Court entered an order of "No alimony to either party." See transcript of the proceedings on January 11, 1990 as on file (page 9), Exhibit A.
On June 11, 1993, the Defendant filed a motion to open and set aside the judgment of dissolution.
The trial court denied the Defendant's motion without addressing the issue of in personam jurisdiction. See transcript of proceedings before Mihalakos, J. on August 23, 1993, Exhibit B.
Thereafter, the Defendant appealed the denial of her motion to open and set aside the judgment of dissolution.
On July 23, 1996, the Appellate Court reversed the judgment against the Defendant relative to her rights to alimony and any other financial claims she may have against her ex-husband. SeePinder vs. Pinder, 42 Conn. App. 254 (July 1996) at page 264.
In its decision, the Appellate Court found that the dissolution court's lack of personal jurisdiction over the Defendant precluded any lawful adjudication of her right to alimony. Quoting from the decision, the Court said:
"Without such jurisdiction, that court was also powerless to determine any other financial claims the Defendant may have against the Plaintiff.
Indeed, the dissolution judgment does not purport to have adjudicated any such claims.
That judgment therefore does not bar the Defendant from presenting those claims in any subsequent litigation.
The judgment is reversed in part, and the case is remanded with direction to render judgment as on file, except as modified to delete the provision concerning alimony." See Exhibit C. CT Page 5290
Since 1978 the Defendant has suffered from multiple sclerosis and has been hospitalized since 1986 in Massachusetts.
The Defendant receives benefits under Title 19.
On May 7, 1997, the Defendant's request for alimony came on for hearing.
Counsel for the Plaintiff and the Defendant were present as was the Plaintiff. The Defendant could not be present.
On the basis of that hearing, the Court makes the followingfindings of fact.
The Plaintiff and the Defendant were married on October 23, 1954 in Springfield, Massachusetts.
There were two children issue of that union, both of whom were adults at the time of the dissolution.
The Plaintiff graduated from high school and extended his education beyond that for three years.
The Plaintiff was skilled in electronics, designed electronic circuits and coils.
Plaintiff held positions with Chandler-Evans, Specific Speed Manufacturing and Reliable Manufacturing Co.
Plaintiff retired from his position with Specific Speed in 1990.
Plaintiff receives a pension from Chandler-Evans in the amount of $92.20 monthly.
The Defendant was a high school graduate, was employed as a bookkeeper and worked from the time of marriage until 1960, when her first child was born.
In 1978, the Defendant was advised by the staff at Lawrence and Memorial Hospital that she was afflicted with multiple sclerosis.
The Defendant was prescribed a regimen of medication and was CT Page 5291 able to remain in her home until 1986.
The Defendant has been unable to walk since 1976 and has been unable to feed herself for a considerable time.
At the time of his retirement, the Plaintiff was earning $8.75 per hour, and his annual income was just under $40,000.00
The Plaintiff and Defendant bought and sold various residences over the years, each time improving their position as to the net proceeds.
On April 1, 1988, the Plaintiff sold the real estate formerly jointly owned by the Plaintiff and Defendant to certain buyers for $86,000.00.
The Plaintiff had earlier secured the Defendant's interest in the real estate while she was in the Massachusetts hospital.
The premises were known as 147 Daviston Street, Springfield, Massachusetts.
At the time of sale there were two mortgages and expenses of sale paid and the Plaintiff netted $33,525.96. See Plaintiff's Exhibit A.
With the sale proceeds the Plaintiff purchased a mobile home for $27,000.00 and a Buick station wagon.
Plaintiff gave one of the children a boat valued at $2,000.00, and the other child $2,000.00 in funds.
Plaintiff purchased a color T.V. for $250.00 for the Defendant.
Subsequently, the mobile home was sold and the Plaintiff purchased a series of boats beginning at $17,500.00, sold for $7,800.00, another boat $8,000.00, sold for $4,500.00, a smaller boat for $2,500.00, sold for $800.00, and a small boat which Plaintiff now has valued at $200.00.
Plaintiff's total monthly income is $1,211.00.
Plaintiff also purchased a series of cars for which he paid cash. CT Page 5292
Plaintiff now owns a 1988 Jeep for which he paid $4,200.00.
Plaintiff's monthly payment on the vehicle is $111.43.
Plaintiff has recently incurred expenses as to said vehicle for a new muffler, water pump, brake job and converter.
The Plaintiff is age 72.
The Defendant is age 62.
The Massachusetts hospital where the Defendant resides is a hospice-type facility.
The Commonwealth of Massachusetts pays all her medical costs, charges and expenses.
In March of 1989, the Plaintiff underwent heart surgery and was out of work for three months. In 1996 Plaintiff underwent a gall bladder operation.
The Defendant is apparently allowed the sum of $60.00 monthly from the Commonwealth of Massachusetts for personal needs.
DISCUSSION
The Defendant requests alimony in the amount of $25.00 weekly in order that she may have a modest amount to provide items such as hairdressing, a phone card, attend ceramic classes, or save toward the purchase of a wheel chair.
The Defendant asks the Court through her counsel to be mindful of her affliction and the limited nature of her life activities due to her physical limitations.
The Defendant, for all intents and purposes, is confined to her hospital setting and cannot engage in any of those pursuits which for most of us make life more tolerable.
The Defendant's financial affidavit reflects weekly income of $13.85 per week, this apparently from the Commonwealth of Massachusetts.
Defendant has no assets and only a prepaid funeral plan. CT Page 5293
Admittedly, the Plaintiff's financial affidavit is extremely modest.
Plaintiff's total weekly income is $279.00.
Plaintiff, according to his financial affidavit, has only a $200.00 boat and $1,500.00 worth of cash value life insurance.
Plaintiff's loan on his 1988 Jeep equals its value.
The Plaintiff, however, in the Court's view, is extremely fortunate by virtue of the fact that the Commonwealth of Massachusetts has provided all the care and therapy to the Defendant at no cost to the Plaintiff.
The Defendant's life style is extremely limited and by virtue of her illness is precluded from the enjoyment of many of life's pleasures that many of us take for granted.
The Plaintiff has had the benefit of all of the avails of the proceeds from the sale of the real estate, he has had a mobile home, various motor vehicles and several boats.
This was a marriage of 36 years.
There is no question that the Plaintiff's circumstances are very modest, but from a humanitarian point of view, the Defendant is entitled to some modest financial recognition to try and brighten a difficult life.
The request of the Defendant through her counsel is extremely modest and although the Plaintiff claims this amount will not materially assist her, in all good conscience, the Court feels the request is reasonable, and alimony to the Defendant in the amount of $25.00 weekly is granted.
The Plaintiff shall deliver over to the Defendant within a reasonable period of time those items reflected on Appendix A attached to Defendant's Summary dated May 7, 1997 as are in his possession.
Mindful of the extremely limited assets of the Plaintiff, and his income being limited to Social Security and a small pension of $21.00 weekly, the Court feels that it can only grant counsel CT Page 5294 fees to the extent of an already outstanding order incident to the appeal in the amount of $200.00, payable at the rate of $10.00 per month.
The Court is mindful of the great expenditure of time and effort in the appeal, and without doubt, counsel has labored mightily for the Defendant.
In arriving at its decision, the Court has considered the provisions of C.G.S. § 46b-82. See Caffe vs. Caffe,240 Conn. 79 (1997).
Austin, J.